UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTIN ANDREW OCHS,

    *Plaintiff*,

v.                                          CASE NO. 12-CV-10861

COMMISSIONER OF                   DISTRICT JUDGE LAWRENCE P. ZATKOFF
SOCIAL SECURITY,                   MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.    REPORT

#### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability and for disability

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

insurance benefits ("DIB"). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 8, 9.)

Plaintiff was 41 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 6 at 39, 115.) Plaintiff's employment history includes work as a union sprinkler fitter in the fire protection business since 1985. (*Id*. at 134.) Plaintiff filed the instant claim on February 25, 2009, alleging that he became unable to work on November 3, 2007. (*Id*. at 115.) The claim was denied at the initial administrative stage. (*Id*. at 63.) In denying Plaintiff's claim, the Commissioner considered disorders of back, discogenic and degenerative, and cervical radiculopathy as possible bases for disability. (*Id.*) On August 8, 2009, Plaintiff appeared before Administrative Law Judge ("ALJ") Regina Sobrino, who considered the application for benefits *de novo*. (*Id*. at 24-35, 39-62.) In a decision dated November 18, 2010, the ALJ found that Plaintiff was not disabled. (*Id*. at 35.) Plaintiff requested a review of this unfavorable decision on December 7, 2010. (*Id*. at 19-23.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on February 2, 2012, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-4.) On February 27, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

  **B.** **Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the

agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations

3

based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

4

without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe

> impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.   ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2012, and that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 3, 2007. (Tr. at 29.) At step two, the ALJ found that Plaintiff's degenerative joint disease of the right elbow, degenerative disc disease of the cervical and lumbar spine, bilateral

6

carpal tunnel syndrome, diabetes mellitus, obesity, and thrombocytopenia were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 30.) At step four, the ALJ found that Plaintiff could not perform any of his past relevant work. (Tr. at 33.) The ALJ also found that on the alleged disability onset date, Plaintiff was a younger individual – age 18 to 49. (Tr. at 34.) At step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 30-33.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 35.)

     E.    **Administrative Record**

A review of the relevant medical evidence contained in the administrative record indicates that on January 14, 2008, Plaintiff underwent arthroscopic surgery on his right elbow for removal of "multiple osteochondral bodies[.]" (Tr. at 241.)

Plaintiff participated in occupational therapy from May through June of 2008 at Genesys Therapy Services. (Tr. at 197-233.) On June 25, 2008, an Occupational Therapy Work Hardening Discharge Summary stated that Plaintiff was "capable of performing major job duties but it may not be without increasing pain. It is difficult to predict what activities may cause the irritation as they have been so variable." (Tr. at 197.)

On August 6, 2008, an MRI of the cervical spine showed "[m]ultilevel degenerative changes present in the cervical spine, with the worse being C5-C6 and C6-C7 where the degree of central canal narrowing is still mild. There is minimal anteroposterior flattened appearance of the cord without increased cord signal at C5-C6." (Tr. at 238.) In addition, it was noted that "[t]here is straightening of the normal lordotic curvature of the cervical spine" and "[m]ultilevel neural foraminal narrowing as described above in detail." (*Id.*)

7

On December 17, 2008, an Electromyogram Report ("EMG") stated that Plaintiff had a "full range of motion of the cervical spine[,]" that his "[m]otor strength was in the normal range" and that "[t]here was no evidence for muscle atrophy or weakness." (Tr. at 240.) The EMG diagnosed "[m]ild left carpal tunnel syndrome[,]" "[m]ild irritation to the left C7 nerve root" and "[l]eft C7 radiculopathy." (Tr. at 243.)

On February 16, 2009, Plaintiff underwent an injection in his elbow for "both diagnostic and therapeutic purposes." (Tr. at 251.)

On March 13, 2009, Plaintiff was examined by Lisa L. Guyot, M.D., Ph.D. Dr. Guyot recommended that Plaintiff "follow up with therapy, injections and see a non-surgical specialist" because although Plaintiff "mentioned many times that his lawyer needs to know what is wrong with him[,]" Dr. Guyot did "not believe surgery would be a good option for this patient." (Tr. at 291.) Dr. Guyot also opined that Plaintiff "might have some element of depression." (*Id.*)

A Physical Residual Functional Capacity ("RFC")Assessment was completed on June 5, 2009, by Michael O'Connor. (Tr. at 264-71.) The assessment concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and was limited in his upper extremities. (Tr. at 265.) As to postural limitations, it was found that Plaintiff should only occasionally climb ramps or stairs and should never crawl or climb ladders or scaffolds. (Tr. at 266.) Plaintiff was found to be limited on the right side in all manipulative skills except feeling, and it was noted that he should only use the right arm for assistance during gross manipulation and was restricted to frequent handling and fingering bilaterally. (Tr. at 267.) There were no visual or communicative limitations established, but the assessor found that Plaintiff should avoid even moderate exposure to vibration and should avoid concentrated exposure to extreme cold or wetness. (Tr. at 268.) The assessor

concluded that Plaintiff's "statements are considered credible to the extent consistent with the MER and info in file." (Tr. at 269.)

On June 10, 2009, Jacob C. Ninan, M.D., examined Plaintiff. Dr. Ninan indicated that "[t]he exact etiology of [Plaintiff's] mild leukopenia and thrombocytopenia is not clear. Drug induced leukopenia and thrombocytopenia or infectious cause are considered." (Tr. at 278.)

On July 8, 2009, Plaintiff was examined by David Massaro, M.D., who diagnosed "[l]eukopenia, resolved[,]" "[m]ild thrombocytopenia[,]" [h]ypertension[,]" "[d]iabetes mellitus type 2," and "[c]ervical and lumbar disk disease." (Tr. at 275.) It was noted that his Plaintiff's "mild thrombocytopenia [] is attributed to the medications or alcohol consumption." (*Id.*)

An MRI of the lumbar spine taken on July 13, 2009, showed "[s]mall to moderate sized herniated disc T11-T12 on the right without any definitive root or cord encroachment[,]" "[m]ild to moderate midline subligamentous disc herniation superimposed on a mildly bulging annulus L4-L5 without any definitive root encroachment[,]" and "[s]mall to moderate partially cephalad extruded – partially interforaminal disc herniation superimposed on a mildly bulging annulus at the L5-S1 level encroaching upon the left L5 root." (Tr. at 279-80.)

On July 28, 2009, Dr. Massaro recommended physical therapy and continued the current pain regimen. (Tr. at 281.)

In his daily activity report, Plaintiff stated that he was able to take care of his own personal needs by relying on his left arm, that he prepares meals for one-half to one hour per meal on a daily basis, and that he washes dishes, mows the lawn, checks the mail, and does light cleaning for two hours daily. (Tr. at 151-52.) Plaintiff also indicated that he walks, drives, and rides in cars, that he shops in stores for groceries for one-half hour once a week, and visits with friends once or twice per week. (Tr. at 153-54.)

At the administrative hearing, Plaintiff testified that he lives with his wife and two children who are three and thirteen years old. (Tr. at 43.) Plaintiff stated that he can walk and stand for "probably 15, 20 minutes," but "after awhile" he "fatigue[s] really fast and sometimes [his] knees give out." (Tr. at 44.) Plaintiff further testified that he does not use a cane and that he can sit in a chair without having to stand up for "probably half an hour or so." (*Id.*) Plaintiff indicated that he has trouble reaching with his right arm, and drops things more often than he used to. (Tr. at 45.) Plaintiff stated that he "get[s] sort of off-centered" using stairs and that he is able to use the stairs in his house even though the handrail is only on one side, requiring him to use his right arm to steady himself. (Tr. at 46.) Plaintiff testified that, "still, I'll go out and sit in a deer blind or something. Go fishing once in a while." (Tr. at 47.) He explained that when he goes fishing, he uses his aluminum fishing boat with an outboard motor and that he is able to put the boat in the water. (*Id.*)

Plaintiff testified that he "can take a shower all right. When I reach, it hurts a little bit but, I mean, I still bathe." (Tr. at 47-48.) Plaintiff also stated he uses a riding lawnmower for "like 20 minutes at a time, and then go back. It takes about four or five times to get the lawn mown." (Tr. at 48.) Plaintiff stated that he drives his daughter to cheerleading practice, goes to the store occasionally, and drives by himself to his uncle's cottage that is approximately 100 miles from his home. (Tr. at 48.) Plaintiff indicated that he takes Vicodin two to three times a day, and also takes medication for blood pressure and diabetes once a day. (Tr. at 49.) Plaintiff stated that he did not have any side effects from his medication. (Tr. at 50.) Plaintiff further testified that he does not see any counselor, therapist, or psychologist. (Tr. at 51.) When asked by his attorney if he takes naps, Plaintiff responded that he takes "[p]robably two" naps per day and each lasts "45 minutes to an hour probably." (*Id.*) Plaintiff stated that his doctor did not recommend surgery for his neck issues

but "wanted to try physical therapy" first. (Tr. at 52.) Although he has carpal tunnel in both hands, he does not use any splints. (Tr. at 52-53.)

The ALJ asked the vocational expert ("VE") to consider a person with Plaintiff's background

> who cannot lift, carry, push or pull more than five pounds frequently, more than 10 pounds occasionally, and there can be no pushing or pulling with the right arm, that's the dominant arm. Assume a person able to stand and walk six hours in an eight-hour workday with typical breaks and a lunch period. The person should not need to climb ladders or stairs, not need to kneel, crouch or crawl, can occasionally stoop. The person cannot perform work that requires full extension or flexion of the right arm. There should be no reaching above shoulder level, and with the right arm, no more than occasional reaching in other directions. Handling, fingering and feeling is limited to frequent. There should be no exposure to hazards or to vibration, no exposure to extremes, no exposure to wetness. The person should not need to drive as a work duty.

(Tr. at 54.) The VE responded that such a person could not perform Plaintiff's past relevant work but could perform the light skilled jobs of security guard (6,000 available in the State of Michigan), information clerk (1,700 available), and visual inspector (2,200 available). (Tr. at 54-55.) The VE also testified that such a person could perform the sedentary jobs of surveillance system monitor (2,000 available), information clerk (1,200 available) and visual inspector (2,400 available) and that an option to alternate position every fifteen minutes would not affect the sedentary jobs but would preclude the light jobs. (Tr. at 56.) The VE also testified that if the person could only use his left arm only, he could still perform the inspector jobs. (Tr. at 57-58.) The VE added that the jobs described were all simple and routine. (Tr. at 58.) The ALJ asked if the VE's testimony was consistent with information from the Dictionary of Occupational Titles ("DOT") and the VE responded that the testimony was consistent. (*Id.*) When asked by Plaintiff's counsel whether a person who required more naps or periods to lie down beyond the typical two fifteen-

11

minute breaks and a thirty- to sixty-minute lunch period could perform the work, the VE responded that such nap requirements would preclude work. (Tr. at 59.)

    **F.**    **Analysis and Conclusions**

    **1.**    **Legal Standards**

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to perform a limited range of light work. (Tr. at 30-33.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

    **2.**    **Substantial Evidence**

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 8.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ "erred as a matter of law in assessing Mr. Ochs' credibility," and thus formed "an inaccurate hypothetical that did not accurately portray Mr. Ochs' impairments." (Doc. 8 at 7-12.)

When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky*, 35 F.3d at 1036.

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y*

13

*of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely* because they are not substantiated by objective medical evidence." S.S.R. 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

(i)  [D]aily activities;

(ii)  The location, duration, frequency, and intensity of . . . pain;

(iii)  Precipitating and aggravating factors;

(iv)  The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)  Treatment, other than medication, . . . received for relief of . . . pain;

(vi)  Any measures . . . used to relieve . . . pain.

*Felisky*, 35 F.3d at 1039-40; S.S.R. 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); S.S.R. 96-7p, at *5.

I suggest that substantial evidence supports the ALJ's finding that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,] [Plaintiff's] statements concerning the intensity, persistence and limiting effects of those symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. at 31.) The ALJ specifically considered all six factors listed above and thoughtfully considered all the medical evidence of record. (Tr. at 30-33.)

The ALJ's findings are consistent with the RFC assessment which concluded that Plaintiff's "statements are considered credible to the extent consistent with the MER and info in file." (Tr. at 269.) The objective medical evidence shows that Plaintiff's cervical and lumbar spine issues may be multilevel but remain "mild" and "minimal." (Tr. at 238.) Plaintiff's thrombocytopenia was also "mild." (Tr. at 275.) Plaintiff maintained a "full range of motion of the cervical spine[,]" his "[m]otor strength was in the normal range," and "[t]here was no evidence for muscle atrophy or weakness." (Tr. at 240.) The lumbar spine issues were also considered "mild" or "small to moderate" and without "root or cord encroachment," except for upon the left L5 root. (Tr. at 279-80.)

There was no indication in the medical record that Plaintiff's diabetes was not controlled by medication and Plaintiff himself testified that he does not have any side effects from his medication, nor does he see any counselor, therapist, or psychologist. (Tr. at 50-51.) Although Plaintiff has carpal tunnel syndrome, he does not use splints or other assistive devices. (Tr. at 52-53.) As for Plaintiff's back and neck pain, surgery has never been recommended and instead Plaintiff has received only modest treatment, such as therapy and prescription medication, which is inconsistent with a finding of disability. (Tr. at 49-53, 197-233, 281, 294.) *See Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007).

I suggest that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessment and was in harmony with the objective record medical evidence and Plaintiff's own statements that he can take care of his own personal needs, that he prepares meals on a daily basis, washes dishes, mows the lawn, checks the mail, does light cleaning for two hours daily, walks, drives and rides in cars, shops in stores for groceries for half an hour once a week, visits with friends once or twice per week, goes fishing, goes deer hunting, uses his aluminum fishing boat with an outboard motor, is able to put the boat in the water, and is able to drive to his uncle's cottage that is approximately 100 miles from his home. (Tr. at 47-48, 151-54.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3.     Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections

a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                         s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗
                                         CHARLES E. BINDER
Dated: October 17, 2012               United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: October 17, 2012              By    s/Patricia T. Morris
                                                                                Law Clerk to Magistrate Judge Binder